UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BEGELMAN & ORLOW, P.C. | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 12-329 |
| v. | : | **Opinion** |
| KRISTY L. FERARA | : | |
| Defendant. | : | |

These matters come before the Court on Defendant Kristy Ferara's Motion for Summary Judgment [72], Plaintiff Begelman & Orlow's Motion for Summary Judgment on the Counterclaim [74], and Plaintiff Begelman & Orlow's Motion for Partial Summary Judgment and for Issuance of a Constructive Trust [76].   The Court has considered the written submission of the parties and the arguments advanced at the hearing on September 11, 2014.   For the reasons expressed on the record during the hearing and those that follow, Defendant's Motion for Summary Judgment [72] is denied in part and granted is part, Plaintiff's Motion for Summary Judgment on the Counterclaim [74] is granted in part and denied in part, and Plaintiff's Motion for Partial Summary Judgment and for Issuance of a Constructive Trust [76] is denied.

## I.   <u>General Background</u>

Defendant Kristy Ferara (Defendant or Ferara) allegedly earned an Internal Revenue Service ("IRS") Whistleblower award, pursuant to 26 U.S.C. §7623.   Ferara denies that she has received the award and, because of the classified nature of the IRS Whistleblower program, there is no evidence that proves or disproves her statement.

Plaintiff Begelman & Orlow, as counsel representing Ferara during the whistleblower process, claims it is entitled to a set percentage of the award under the terms of its retainer agreement with Defendant. Defendant claims that Begelman & Orlow is not entitled to a fee and she alleges in her counterclaims that the firm committed legal malpractice and equitable fraud.

## II.    <u>Factual Background</u>

In part, the following background is taken from the Court's March 15, 2012 Opinion.   The facts according to Plaintiff's Amended Complaint are as follows. Plaintiff and Defendant entered into a contingency fee agreement ("the Agreement") on October 29, 2007 for Plaintiff's representation of Defendant in a claim under the whistleblower award provisions of 26 U.S.C. § 7623 (the "IRS matter"). Am. Compl. at ¶¶ 1, 7. Applicants may file for whistleblower awards where they report an alleged tax liability which exceeds $2 million. <u>Id.</u> at ¶ 13. Internal Revenue Manual 25.2.2-25.2.2.13.2 governs the process under which claimants may seek such awards. In accordance with such procedures, Plaintiff filed on Defendant's behalf IRS Form 211 on November 5, 2007. <u>Id.</u> at ¶ 14. Part of the submission included the filing of Form 2848, which granted Plaintiff Power of Attorney and authorized Plaintiff to act as Defendant's representative. <u>Id.</u> at ¶ 17. Plaintiff's representation in this matter did not involve the filing of a lawsuit, and the submission to the IRS is filed in confidence. <u>Id.</u> at ¶ 13. Whistleblowers receive payment from the funds collected from the tax debtor as a result of the IRS's action; awards range from fifteen to thirty percent of the funds collected. <u>Id.</u> at ¶ 18. Both Plaintiff and Defendant believed that Defendant's case could involve substantial sums of

money. Am. Compl. at ¶ 16.

In August of 2011, the IRS Office of Whistleblowers notified Plaintiff that the underlying tax case settled. Id. at ¶ 21. The IRS notified Plaintiff on or about December 10, 2011 that the award calculation and issuance of a Preliminary Recommendation award letter would occur within the next month. Id. at ¶ 22. According to Plaintiff, this Preliminary Recommendation would likely include the amount of the whistleblower award that the IRS intended to award Defendant. Id. The IRS requested that Plaintiff participate in a teleconference with the Office of Whistleblowers during the week of January 9, 2012 to discuss the Preliminary Recommendation; Defendant was notified that the teleconference would take place and that Plaintiff believed its purpose was to inform Plaintiff of the amount of the award. Id. at ¶¶ 23, 25.

On January 9, 2012, Defendant sent an email to Plaintiff, in which she stated that she had revoked Begelman & Orlow's Power of Attorney with the IRS and stated that she was terminating the contract with Plaintiff. Id. at ¶ 27. In the letter, Defendant indicated her intent to provide Plaintiff with written feedback at a later date concerning certain issues regarding the representation. Id.; Am. Compl., Ex. 3. Defendant stated that she felt such steps were "necessary to resolve concerns and forge a path going forward" and that she was "striving for an honest and fair dialogue." Am. Compl., Ex. 3. Defendant further stated that this would provide Plaintiff with "an opportunity to consider [her] concerns, provide feedback and consider wether [sic] or not we can continue to work together." Id. Defendant asked that Plaintiff not contact her "via phone or in person in the next weeks, but rather take the opportunity to regroup and reflect" on what she had

written. Id.

Plaintiff sent Defendant a letter dated January 11, 2012 asking Defendant to reconsider her actions and Defendant did not respond. Am. Compl. at ¶ 28; Ex. 4. As a result of Defendant's termination of Plaintiff's Power of Attorney and revocation of the contract, Plaintiff asserts that, due to the confidential nature of the matter, it will be blocked from any knowledge of the Preliminary Recommendation, or from participating further in the process or having knowledge of any settlement or award. Am. Compl. at ¶ 30. According to the terms of the Agreement, Plaintiff's fee for representing Defendant in the IRS matter was to be 33 1/3% of the gross amount of the award minus costs. Id. at ¶ 36; Ex. 1 & 2.

### III.   **Procedural History**

Plaintiff filed its Original Complaint in this matter on January 18, 2012, alleging claims for breach of contract (Count I), conversion (Count II), unjust enrichment (Count III), and quantum meruit (Count IV). In the meantime, a newspaper article published a story on the underlying facts of the case, exposing Ferara as a whistleblower.   The Court granted Plaintiff leave to file an amended complaint properly pleading the citizenship of each party, and Plaintiff filed an Amended Complaint on February 2, 2012, adding a claim seeking the formation of a constructive trust (Count V). On January 19, 2012, Plaintiff filed a Motion for Preliminary Injunction, Declaratory Judgment, and Attorney's Fees Lien. [Docket Entry # 3.] Defendant, proceeding pro se at the time, filed an Answer to the Original Complaint [Docket Entry # 10] and an Answer to the Amended Complaint [Docket Entry # 11] on February 6, 2012. The Court denied

Plaintiff's motion for a preliminary injunction. The present motions for summary judgment followed.

The Court held a hearing on the motions and directed the parties to file supplemental briefs. In general terms, there is a dispute about whether Defendant has been compensated by the IRS for her Whistleblower activities and whether she owes Plaintiff compensation for its efforts on her behalf pursuant to the contingency fee agreement. In addition, there appears to be a dispute over whether there is a valid contingency fee contract. Both parties claim that their position is undisputed. Ferara and Begelman entered into a contingency agreement in October 2007. They entered into a subsequent contingency fee agreement in November 2007. The November agreement cannot be located and has not been produced for consideration. Plaintiffs claim it is identical to the October agreement, although in deposition the exact terms of that agreement could not be recalled. Defendant admits she entered into an agreement in November, but claims that it is not a valid agreement because there is no writing.

## IV.  Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986)); accord Fed. R. Civ. P. 56 (c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).   A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id.   In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party.   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact.   Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).   Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial.   Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994).   Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party.   Andersen, 477 U.S. at 256-57.   Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.   Celotex, 477 U.S. at 322.

6

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.   <u>Anderson</u>, 477 U.S. at 249.   Credibility determinations are the province of the finder of fact.   <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992).

## V.   <u>Analysis</u>

Both Defendant Ferara and Plaintiff Begelman & Orlow move for summary judgment as to each count of the Amended Complaint. For the reasons that follow, Summary judgment is granted in favor of Defendant Ferara as to Counts I, II, and III. Summary judgment is denied as to Counts IV and V.

### A.  **[72] Defendant Kristy Ferara's Motion for Summary Judgment and [76] Plaintiff Begelman and Orlow's Motion for Partial Summary Judgment and Declaratory Judgment**

Defendant Ferara moves for summary judgment as to each of Plaintiff's claims in the Amended Complaint.   Ferara contends that summary judgment is warranted as to the breach of contract claim and claim for *quantum meruit* because Plaintiff cannot prove that Ferara has received an award. In addition, Ferara claims that there is no valid contingency agreement between herself and Begelman & Orlow, therefore the firm cannot recover under breach of contract. Ferara also claims that New Jersey law does not permit attorneys to recover from their clients under a breach of contract theory where a client discharges the attorney prior to the contingency's occurrence.

Ferara argues that summary judgment is warranted as to the claims for conversion, unjust enrichment, and constructive trust because these claims fail as a matter of law

where an attorney-client fee contract is in dispute. Counsel claims that there is no authority to support recovery under these theories and that the only possible avenue is *quantum meruit.* In the alternative, Ferara claims that in the absence of an award, there so there is no property at issue to convert. Likewise, the unjust enrichment claim fails because there is no award. Finally, there is no wrongful act to warrant the imposition of a constructive trust.

1. Plaintiff's Claims for Breach of Contract (Count I) and *Quantum Meruit* (Count IV)

Summary judgment is granted as to Count I in favor of Defendant and denied as to Count IV.

As an initial matter, the Court finds that the contingency fee agreement is valid. Under New Jersey law, a contingency fee agreement is not valid unless it complies with RPC Rule 1.5(c), which requires that the agreement be in writing. Here, the initial agreement was entered into on October 29, 2007.   It is undisputed that a second written contingency fee agreement was entered into on November 7, 2007 which concerned the same legal services. Begelman and & Orlow cannot produce this agreement and, as a result, Ferara claims that it is unenforceable pursuant to RPC 1.5(c).   However, during oral argument, counsel for Ferara did not dispute that the written agreement of October 29, 2007 governs.

Given the existence of a contract, the issue here is whether a breach occurred.   In the context of this highly unusual case, there is no evidence in the record that a breach occurred. Ferara claims that she has never received an award from the IRS, a claim she again echoed during a conference call on February 8, 2016. In addition, counsel for her

8

former employer Novartis (against whom she blew the whistle) testified in an affidavit that there has been no award. However, given the confidentiality mandated by the Internal Revenue Service's Whistleblower Statute, § 7623, only Ferara and the IRS will ever really know whether and/or when Ferara receives her award. See Internal Revenue Service Manual 25.2.2. As a result, Plaintiff may never have the evidence it needs to collect the fees incurred in the course of its representation of Ferara.   Nonetheless, on this record, given the absence of any proof of an award and, hence, a breach, summary judgment must be granted as to the breach of contract claim.

During oral argument, Ferara seemed to agree that Plaintiff's claims for q*uantum meruit* survive summary judgment even though Ferara discharged Plaintiff prior to the receipt of an award. The Court agrees.

A "contract for legal services is not like other contracts... ordinary contract principles... must give way to the higher ethical and professional standards enunciated by our Supreme Court." Cohen v. Radio-Electronics Officers Union, 146 N.J. 140, 163-164 (1996) (quoting Cohen v. Radio-Electronics Officers Union, 275 N.J. Super. 241, 259 (1994). "Under ordinary circumstances, a client may discharge an unwanted attorney with or without cause." Glick v. Barclays De Zoete Wedd, Inc., 300 N.J. Super. 299, 309-10, 692 A.2d 1004, 1009-10 (App. Div. 1997). "The client's right to terminate at will is not a breach of contract but a contract term implied at law based upon the special relationship of trust and confidence between attorney and client." Cohen, 275 N.J.Super. 241, at 261.

The New Jersey Supreme Court directs that a breach of contract claim is not the

mechanism for recovery where "[a]n attorney [is] hired on a contingent fee basis and [is] later discharged before completion of the services[.]" <u>Id.</u> Instead, Begelman & Orlow "may be entitled to recover on a quantum meruit basis for the reasonable value of the services rendered." <u>Id.</u> (citing <u>Cohen</u>, 146 N.J. 140, 679 A.2d 1188 (1996); <u>In re Estate of Poli</u>, 134 N.J. Super. 222, 227, 338 A.2d 888 (Mercer County Ct. 1975)).

"Quantum meruit is a quasi-contractual remedy in which a contract is implied-in-law under a theory of unjust enrichment; the contract is one that is implied in law, and not an actual contract at all." <u>Allegheny Gen. Hosp. v. Phillip Morris</u>, 228 F.3d 429, 447 (3d Cir. 2000) (internal quotations omitted). "To state a claim for recovery based on quantum meruit, a plaintiff must establish four elements: (1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services." <u>TBI Unlimited, LLC v. Clearcut Lawn Decisions, LLC</u>, 2013 WL 1223643, *5 (D.N.J. Mar. 25, 2013) (citing <u>Starkey, Kelly, Blaney, & White v. Estate of Nicolaysen</u>, 172 N.J. 60, 68, 796 A.2d 238 (2002)).

Here, there is a factual dispute related to the nature and quality of the services rendered by Plaintiff on behalf of Ferara.   The parties' debate about the facts underscoring the elements of *quantum meruit* leave no room for summary judgment. Summary judgment is denied as Count IV, a claim for *quantum meruit*.

2.  <u>Plaintiff's Claims for Conversion (Count II) and Unjust Enrichment (Count III)</u>

Ferara moves for summary judgment as to Counts II and III on the grounds that New Jersey law does not recognize claims for conversion, unjust enrichment, and constructive trust when an attorney-client fee contract is in dispute.   In the alternative, Ferara argues that no duty exists to support the conversion claim and, again, alleges that because there is no evidence of an award, there is no property to support a conversion claim. For the same reason, the unjust enrichment claim fails because there is no evidence of an award. Ferara claims that she is permitted to end the attorney client relationship at any time and, again, argues that she has not received an award from the IRS.

In New Jersey, there are two elements necessary to establish a claim of unjust enrichment: "(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable." Wanaque Borough Sewerage Auth. v. West Milford, 144 N.J. 564, 575, 677 A.2d 747 (1996); see also Canadian Nat. Ry. v. Vertis, Inc., 811 F. Supp. 2d 1028, 1034 (D.N.J. 2011). For the same reasons supporting summary judgment as to the breach of contract claim, summary judgment is warranted as to the claim for unjust enrichment.   Simply put, there is nothing in the record to support the conclusion that Ferara has received an award and there is no genuine issue of fact related to this determination. Therefore, there is no evidence that she has been unjustly enriched by the retention of the benefits bestowed by Plaintiffs' efforts. Wanaque Borough Sewerage Auth., 144 N.J. at 575. Summary judgment is granted as to Count III in favor of Defendant.

Summary judgment is granted in favor of defendant as to Plaintiff's claim for

conversion, as plead in Count II.   Under New Jersey law, the tort of conversion is defined as the "'intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.'" Chicago Title Ins. Co. v. Ellis, 409 N.J. Super. 444, 454, 978 A.2d 281 (App. Div.) (quoting Restatement (Second) of Torts § 222A (1) (1965)). A successful claim of conversion requires a plaintiff establish "(1) the existence of property, (2) the right to immediate possession thereof belonging to plaintiff, and (3) the wrongful interference with that right by defendant." Corestar Int'l Pte, Ltd. v. LPB Commc'n, 513 F.Supp 2d 107, 127 (D.N.J. 2007).

There is no evidence that Defendant has or will receive an award from the IRS, that Plaintiff Ferara has realized any benefit from Plaintiff's representation, that the award exists, and/or that Ferara is interfering with Plaintiff's rights to the award. Additionally, in New Jersey "a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law." Saltiel v. GSI Consultants, Inc., 170 N.J. 297, 316 (2002). The only duty Defendant owes to Plaintiff relates to the contingency fee agreement; evidence of an independent duty is lacking.   For these reasons, summary judgment is granted in favor of Defendant as to the claim of conversion plead in Count II.

3. Plaintiff's claim for Declaratory Judgment and the imposition of a Constructive Trust (Count V)

Plaintiff seeks the imposition of a constructive trust to ensure that Defendant, who holds a German passport, does not abscond with the IRS award once it is conferred. Ferara argues that because there is no wrongful act to warrant the imposition of a

12

constructive trust, summary judgment must be granted as to Count V. Plaintiff also moves for partial summary judgment as to Count V, arguing that because the contingency fee agreement is a valid contract and because Ferara has threatened not to pay Plaintiff, Ferara's wrongful conduct validates imposition of a constructive trust.

The Declaratory Judgment Act, 28 U.S.C. § 2201, empowers federal courts to grant declaratory relief, and the Court's exercise of this declaratory relief power is discretionary. Unionamerica Ins. Co., Ltd. v. Nufab Corp., 30 Fed. Appx. 30, 33 (3d Cir. 2002) (citing State Auto Ins. Co. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000)). Plaintiff asks that the Court enter a declaratory judgment "ordering that plaintiffs Begelman Orlow are entitled to a thirty three and one third percent (33 1/3%) share of any and all funds received by defendant Ferara from the IRS Office of Whistleblower Rewards (net of gross fee minus costs, with full cost reimbursement)." Pl.'s Br. at 11.

In its breach of contract cause of action, Plaintiff alleges in its Amended Complaint that "[a]ccording to the contract, defendant Ferara is legally obligated to pay Begelman Orlow a fee of thirty-three and one third percent (33 1/3%) of the gross amount of the award, minus costs, for their performance of services under the contract." Am. Compl. at ¶ 36. A declaratory judgment is justified if Plaintiff can prove the existence of a contract and that Ferara breached that contract.

"A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest equity converts him into a trustee." Beatty v. Guggenheim Exploration Co., 225 N.Y. 380, 122 N.E. 378,

386 (1919) (Cardozo, J.).   Here, Plaintiff must meet a high burden to establish the imposition of a constructive trust is warranted as "the suitability of imposing a constructive trust must be established by the movant by clear, definite, unequivocal and satisfactory evidence." Jurista v. Amerinox Processing, Inc., 492 B.R. 707, 772 (D.N.J. 2013) (internal citations omitted). New Jersey employs a two-prong test to determine whether a constructive trust is warranted. First, a court must find that a party has committed "a wrongful act." D'Ippolito v. Castoro, 51 N.J. 584, 589, 242 A.2d 617 (1968). The act, however, need not be fraudulent to result in a constructive trust; a mere mistake is sufficient for these purposes. Dobbs, supra, § 4.3, at 243 (observing that "constructive trust may be used as a remedy for innocent misstatements, or even simple mistakes, as well as a remedy for fraud"). Second, the wrongful act must result in a transfer or diversion of property that unjustly enriches the recipient. Castoro, supra, 51 N.J. at 589, 242 A.2d 617; D'Ippolito, 51 N.J. 584, 242 A.2d at 619 (A constructive trust may arise "where the retention of the property would result in the unjust enrichment of the person retaining it."); Flanigan v. Munson, 175 N.J. 597, 608, 818 A.2d 1275, 1281 (2003).

Here, Plaintiff fails to sufficiently establish the elements necessary for the imposition of a constructive trust. Primarily, evidence of wrongdoing by Ferara is lacking and there are credibility determinations associated with the calculus.   At best, Ferara disputes that Plaintiff is entitled to fees for its work on her behalf.

> Q. Are you still adverse to holding funds in escrow for the payment of a legal fee if you obtain a successful result with the IRS?
> A. Yes.
> Q. And what is the basis for you refusing to keep funds in escrow?

       MR. PATE: I'll object to the form of the question. You can answer it
if you can.
A.  I don't see the need to pay Begelman Orlow.

<u>See</u> Deposition of Kristy L. Ferara, Ex. F., Aff. of John J. Slimm at 163:4-17, 190:4-15.

The Court disagrees with Plaintiff that this is evidence of refusal to pay and does not

indicate an intention never to compensate Begelman & Orlow.   Rather, as evidenced by

the claims in her Counterclaim and in her deposition, Ferara projects a basis for

disqualifying Plaintiff from payment for the services rendered for failure to perform

satisfactory work.

       Q. Okay. Do you agree that the law firm is entitled to be compensated for its
work on our behalf in this case?
A. Not at this time.
Q. Why not?
A. I believe that the documentation presentation is so poor that it has to be
reworked. Exposing me as a whistleblower, damaging my reputation, my
ability to earn a normal salary as an executive or anything else has been
completely ruined.
Q. Anything else?
A. And that outweighs paying them anything at this point in time.
               .     .     .
Q. Do you agree that the law firm is entitled to be paid for the years of work
that it did on your behalf?
A. No.
Q. Okay. Why not?
A. Because they did poor work.

<u>Id.</u> at 163:4-17; 164:18-23.

       Plaintiff fails to establish the burden necessary or the imposition of a constructive

trust as questions of fact and credibility loom over Defendant's intention to live up to

her obligations under the contingency fee agreement.   The Court' rejects Plaintiff's

characterization of Ms. Ferara's testimony as indicative of an intention to withhold

payment from Begelman Orlow, even in the event the Court determines payment is

merited.   As a result, Begelman and Orlow has failed to put forth "clear, definite, unequivocal and satisfactory evidence" of wrongdoing sufficient for the imposition of a constructive trust and summary judgment is denied as to Count V. <u>Jurista</u>, 492 B.R. at 772; <u>Thompson v. City of Atlantic City</u>, 386 N.J. Super. 359, 375-76, 901 A.2d 428, 438 (2006) (Under New Jersey law, a constructive trust may be created where property has been wrongfully or inequitably transferred.); <u>D'Ippolito</u>, 51 N.J. at 589, 242 A.2d 617 (The imposition of a constructive trust necessitates a finding of a "breach of a confidential relationship which has resulted in the transfer of property.").

### B. <u>Defendant Ferara's Counterclaim; Ferara's Motion for Partial Summary Judgment [72] and Begelman and Orlow's Motion for Summary Judgment [74]</u>

The Counterclaim alleges as follows: Count I, Equitable Fraud as to Begelman Orlow's Failure to Disclose Prior Ethical Violations; Count II, Count Equitable Fraud as to Begelman Orlow's Failure to Comply with the Terms of Mr. Orlow's Suspension, Count III, Equitable fraud as to Begelman Orlow's misrepresentation regarding conversations with the IRS; Count IV Breach of Fiduciary Duty; and Count V, Legal Malpractice.

The underlying allegations in the Counterclaim relate to attorney Orlow's suspension from the practice of law due to numerous prior ethical violations and the firm's failure to disclose the same to Ferara.   In general terms, Ferara claims that the firm failed to inform her of Mr. Orlow's suspension and allowed Mr. Orlow to represent her while he was suspended from practice.   In addition, Plaintiff failed to present Ferara's claim to its best advantage, failed to forward Ferara's eighth supplemental

submission to the IRS, failed to prevent Ferara from terminating the attorney-client relationship by pressuring and threatening her, disclosed Ferara's privileged and confidential information public, embarrassed her and portrayed her in a negative light, knowingly filed claims against her that lacked merit and were legally barred, and attempted to compromise her claim by taking an adversarial position against the IRS.

Ferara moves for Summary Judgment on the Counterclaim, only as to Count II, which alleges Equitable Fraud as to Begelman Orlow's Failure to Comply with the Terms of Mr. Orlow's Suspension.   Ferara claims that because attorney Orlow, who is the signatory on almost every document relating to Ferara's case, was suspended from the practice of law in 2009 (during his representation of her) and failed to disclose this fact, Plaintiff has violated RPC 1:20-20(b). As a result, Plaintiff claims that she is not responsible for *quantum meruit* because Orlow failed to inform her of his suspension.

Begelman & Orlow also move for summary judgment on every count plead in the Counterclaim, primarily advancing the theory that Ferara's claims allege ethical violations which are not actionable in a court of law.   In support, Plaintiff argues that because Ferara's expert has not established that the underlying IRS whistleblower claim was viable, the Court should grant summary judgment as to all claims.   In addition, Plaintiff claims that Ferara's expert fails to establish a deviation from the standard of care and, therefore, summary judgment must be granted as to the claims of malpractice. McGrogan v. Till, 167 N.J. 414, 425 (2001); Carney v. Finn, 145 N.J. Super. 234, 236 (App. Div. 1976). See, Rosenberg v. Cahill, 99 N.J. 318, 325 (1985); Sommers v. McKinney, 287 N.J. Super. 1, 10 -11 (App. Div. 1996); Aldridge v. Hawrylo, 281 N.J.

17

Super. 201, 214 (App. Div. 1995); <u>Brizak v. Needle</u>, 239 N.J. Super. 415, 431-32 (App. Div. 1990); <u>Brach, Eichler, Rosenberg, Silver, Bernstein, Hammer & Gladstone, P.C. v. Ezekwo</u>, 345 N.J. Super. 1 (App. Div. 2001).

Plaintiff also argues that Ferara fails to establish that the firm's negligence proximately caused her damages. <u>Davin, LLC v. Daham</u>, 329, N.J. Super. 54, 72 (App. Div. 2000). Plaintiff contends that Ferara has not proven through competent expert opinion that she would have won a favorable award from the IRS on her whistleblower claim.   Plaintiff also challenges as insufficient, Ferara's expert report because it at best a violation of RPC 1.16(d) and not a cognizable claim.   According to Stephen M. Orlofsky, Plaintiff's expert, the Rules of Professional Conduct do not provide an independent basis for a cause of action and a violation of the RPCs do not, standing alone, create a duty. Orlofsky contends that the absence of an RPC violation warrants dismissal of the Counterclaim in its entirety.

Finally, Plaintiff argues that Ferara has not established that she suffered damages as a result of the filing of the present collection case and the Counterclaim should be dismissed on this alternative basis.

It is well established that a violation of a Rule of Professional Conduct does not give rise to a cause of action. <u>See</u> <u>Sommers v. McKinney</u>, 287 N.J.Super. 1, 13, 670 A.2d 99 (App. Div. 1996) ("Violation of the rules of professional conduct do[es] not per se give rise to a cause of action in tort.").   Likewise, a violation of a Rule does not in and of itself "create any presumption that a legal duty has been breached." <u>Baxt v. Liloia</u>, 155 N.J. 190, 197, 714 A.2d 271, 274–75 (1998).

> By this language, the ABA "intended to make clear that the purpose of the Model Rules was to regulate lawyer conduct through the disciplinary process, not to serve as a basis for civil liability." <u>See</u> The Legislative History of the Model Rules of Professional Conduct: Their Development in the ABA House of Delegates 20 (1987).

<u>See</u> Model Rules of Professional Conduct, Scope (1992).

Here, Ferara does not argue that the firm's negligence or malpractice was the proximate cause of the failure to realize an award from the IRS.   Ferara need not prove "the case within the case" to the extent that her "malpractice" arguments are defenses to Plaintiff's claim for fees.   The Court finds that the only potential malpractice claim here relates to the disclosure of Defendant's personal information when the Plaintiff filed suit and exposed Ferara as a whistleblower. To the extent that other violations are plead, the Court holds that consistent with New Jersey law, such claims are not independently actionable in this Court, but may be advanced as a defense to *quantum meruit*.

Ferara also argues that Plaintiff committed procedural default by notifying her of its intent to sue her for fees, and in that notice providing her with 30 days to request arbitration, but then filing the present matter only nine days later. <u>See</u> Am. Compl., Ex. 4.   New Jersey Court Rule 1:20A–6 provides:

> No lawsuit to recover a fee may be filed until the expiration of the 30 day period herein giving Pre–Action Notice to a client.... The attorney's complaint shall allege the giving of the notice required by this rule or it shall be dismissed.

In <u>Mateo v. Mateo</u>, 281 N.J. Super. 73, 80, 656 A.2d 846, 850 (App. Div. 1995), the New Jersey Appellate Division held that failure to comply with Rule 1:20A-6 must result in dismissal of the claim for fees.

> "Dismissal is now an express requirement of R. 1:20A-6, but it has always been a requirement of sound policy in regulating the practice of law. There is no sense in requiring an attorney to inform a client that litigation over a fee dispute may be avoided by bringing the matter before the Fee Committee, yet binding the client to a judgment in such litigation where the attorney failed to give the required notice."

<u>Mateo</u>, 281 N.J. Super. at 80, 656 A.2d at 850.

Here, notice was given, but Plaintiff filed the present action before the expiration of the 30 day period. Since <u>Mateo</u>, strict compliance with the Rule has been upheld and cases that fail to provide the Pre-Action Notice have been summarily dismissed. <u>See</u> <u>e.g.</u>, <u>Cole, Schotz, Bernstein, Meisel & Forman, P.A. v. Owens</u>, 292 N.J. Super. 453, 459, 679 A.2d 155, 158 (App. Div. 1996) ("The failure to give the notice requires dismissal of the motion"); <u>Schepisi & McLaughlin, P.A. v. LoFaro</u>, 430 N.J. Super. 347, 357, 64 A.3d 592, 598 (App. Div. 2013) ("The Pre–Action Notice requirement applies to a petition to establish an attorney's lien as well as to a complaint for attorney's fees. New Jersey law is clear that in the absence of compliance with the Rule, such a petition must be dismissed.) (citations omitted). Plaintiff argues that it complied with the Rule by filing the Pre-Action Notice and that it did not impede Ferara's rights by not waiting until after the expiration of the 30-day period to file the present action because Ferara never intended to pay the fees. Plaintiff's argument, while predicated upon speculation regarding Ferara's intent to pay, is not without merit.

The Court finds that Ferara's rights were not impeded by the premature filing of

the present matter.   Ferara was properly notified of Plaintiff's intent to collect fees and was free to invoke arbitration under the Pre-Action Notice, despite the premature filing of this action.   Summary judgment is denied as to the claim of procedural default.

Summary judgment is also denied as to Ferara's claims of damages. There are questions of fact related to the damages associated with Ferara's claim of malpractice, damage to reputation, expenses in prosecuting her counterclaims, and defamation. Under New Jersey law, "the right to recover damages in an action premised upon libel without proof of harm remains the law in this jurisdiction."   <u>W.J.A. v. D.A.</u>, 416 N.J. Super. 380, 387 (2010).   In addition, Ferara's claims that she is damaged are subject to credibility determinations.

Summary judgment is also denied as to Ferara's claim of Equitable Fraud as related to attorney Orlow's suspension because there are questions of fact related to whether Orlow was lead counsel, whether Orlow ever communicated with Ferara during his suspension, and whether Plaintiff's failure to inform Ferara of the suspension constitutes fraudulent concealment.

Ferara relies on New Jersey Court Rule 1:20-20(b) (13) to disqualify Orlow's entitlement to fees in this case.   In relevant part, the Rule provides:

> (b) Notice to Clients, Adverse Parties and Others. An attorney who is suspended ... or disbarred ...:
> ....
> shall not share in any fee for legal services performed by any other attorney following the disciplined or former attorney's prohibition from practice, but may be compensated for the reasonable value of services rendered ... prior to the effective date of the prohibition, provided the attorney has fully complied with the provisions of this rule and has filed the required affidavit of compliance under subparagraph (b)(15).... If an attorney-trustee has been appointed under R. 1:20-19, all fees for legal

21

services and other compensation due the attorney shall be paid solely to the attorney-trustee for disbursement as directed by the court in accordance with the provisions of that rule. Compensation shall include any monies or other thing of value paid for legal services due or that is related to any agreement, sale, assignment or transfer of any aspect of the attorney's share of a law firm[.]

See Eichen, Levinson & Crutchlow, LLP v. Weiner, 397 N.J. Super. 588, 593–94, 938 A.2d 947, 950 (App. Div. 2008) (citing R. 1:20-20(b)(13)(emphasis added)).

Rule 1:20-20(b) (13) prohibits a suspended or disbarred attorney from sharing in any legal fee earned by any other attorney during the suspension or disbarment.   Here, there is a dispute in the record related to whether Attorney Orlow performed services on behalf of Ferara during his suspension and whether or not he was the lead attorney on the case. Given the questions of fact related to the nature of attorney Orlow's services in relation to Ferara's Whistleblower claim, summary judgment is denied as to Count II of the Counterclaim.

Finally, with respect to the entirety of the counterclaim, Plaintiff argues that the litigation privilege immunizes it from liability.   The litigation privilege insures that "[s]tatements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." Peterson v. Ballard, 292 N.J.Super. 575, 679 A.2d 657, 659 (N.J. Super. Ct. App. Div. 1996) (citing Erickson v. Marsh & McLennan Co., Inc., 117 N.J. 539, 569 A.2d 793 (1990)).   Courts broadly construe the privilege, applying it to not only statements made in the course of litigation but also to statements made outside of the courtroom. Rickenbach v. Wells Fargo Bank, N.A., 635 F. Supp. 2d 389, 401–02 (D.N.J. 2009)

(citations omitted).

Application of the privilege is a question of law. <u>Peterson</u>, 679 A.2d at 664.   To determine whether the privilege applies, courts consider:

> any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.

<u>Rickenbach</u>, 635 F. Supp. 2d at 401–02 (citing <u>Hawkins v. Harris</u>, 141 N.J. 207, 661 A.2d 284, 289 (1995)).

The contours of the privilege are not absolute.   For example, the privilege may apply in tort and defamation claims, but becomes less certain in malpractice actions. <u>See e.g.</u> <u>Loigman v. Twp. Comm. of Twp. of Middletown</u>, 185 N.J. 566, 583, 889 A.2d 426, 436 (2006) ("In New Jersey, the litigation privilege protects attorneys not only from defamation actions, but also from a host of other tort-related claims."); <u>Rabinowitz v. Wahrenberger</u>, 406 N.J. Super. 126, 966 A.2d 1091 (N.J. Super. Ct. App. Div. 2009) (privilege upheld in case involving intentional and negligent infliction of emotional distress); <u>Commercial Ins. Co. of Newark v. Steiger</u>, 395 N.J. Super. 109, 928 A.2d 126 (2007) (material misrepresentation); <u>Ruberton v. Gabage</u>, 280 N.J. Super. 125, 654 A.2d 1002 (1995) (and negligent misrepresentation, fraud, and malicious interference with prospective economic advantage).

In <u>Buchanan v. Leonard</u>, the New Jersey Appellate Division noted the absence of precedent for application of the privilege in malpractice actions. "Our courts have not specifically addressed the question of whether the litigation privilege protects an attorney from claims by his client." <u>Buchanan v. Leonard</u>, 428 N.J. Super. 277, 286, 52

A.3d 1064, 1069 (App. Div. 2012).   The Appellate Division, drawing on Supreme Court precedent, held that that the litigation privilege does not protect an attorney from a malpractice claim when, as in this case, there are allegations that an attorney acted in contrast to the Rules of Professional Conduct. Id. ("It therefore follows that the litigation privilege does not protect an attorney from a claim by his or her client based upon statements the attorney made in the course of a judicial proceeding where, as in this case, it is alleged that the attorney breached his duty to the client by failing to adhere to accepted standards of legal practice.") (citing Hawkins v. Harris, 141 N.J. 207, 215, 661 A.2d 284 (1995) (Stating that the court is "committed to assuring that attorneys comply with accepted professional standards.")

Given the allegations here, the litigation privilege does not apply.   Summary judgment is denied.

## VI.   Conclusion

For the reasons stated herein, summary judgment is granted in favor of Defendant Ferara as to Counts I, II, and III of the Amended Complaint and denied as to Count IV. Summary judgment is denied as to Plaintiff's claim for a constructive trust and declaratory judgment.   Summary judgment is denied as to each claim in the counterclaim.

An appropriate Order shall issue.

Dated: December 8, 2016

s/ Joseph H. Rodriguez
HON. JOSEPH H. RODRIGUEZ,
United States District Judge
